RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0230p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

NIMA NASSIRI,

    *Petitioner-Appellant,*

 *v.*

THOMAS P. MACKIE, Warden,

    *Respondent-Appellee.*

No. 19-1025

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:18-cv-00213—Janet T. Neff, District Judge.

Decided and Filed: July 27, 2020

Before: CLAY, WHITE, and READLER, Circuit Judges.

---

## COUNSEL

**ON BRIEF:** Stuart G. Friedman, Southfield, Michigan, for Appellant.

---

## OPINION

---

CLAY, Circuit Judge. Petitioner Nima Nassiri appeals the district court's judgment *sua sponte* denying his 28 U.S.C. § 2254 petition for a writ of habeas corpus as barred by the one-year statute of limitations of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), *id.* § 2244(d)(1). On appeal, Nassiri argues that the counsel responsible for his late filing inadequately presented his equitable tolling argument before the district court, due to counsel's conflicted interests.

For the reasons set forth in this opinion, we **VACATE** the district court's judgment and **REMAND** to allow Nassiri an opportunity to develop and present his equitable tolling argument anew, while represented by unconflicted counsel.

## BACKGROUND

In 2014, a jury convicted Nassiri of the second-degree murder of his wife. *People v. Nassiri*, No. 324868, 2016 WL 1391300, at \*1 (Mich. Ct. App. Apr. 7, 2016); *see* Mich. Comp. Laws § 750.317. He was sentenced to twenty to forty years' imprisonment. 2016 WL 1391300, at \*1. The Michigan Court of Appeals affirmed Nassiri's conviction, *id.*, and the Michigan Supreme Court denied leave to appeal on November 30, 2016, *People v. Nassiri*, 887 N.W.2d 403 (Mich. 2016) (mem.).

On March 1, 2018, Nassiri, proceeding through independently retained counsel, filed with the district court a 28 U.S.C. § 2254 petition for a writ of habeas corpus, asserting two claims of ineffective assistance of trial counsel. The district court screened that petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases. A magistrate judge then issued a report and recommendation ("R&R") recommending that the court *sua sponte* deny the petition as untimely. She concluded that Nassiri's petition had not been submitted within AEDPA's one-year statute of limitations, 28 U.S.C. § 2244(d)(1)(A), after methodically calculating the relevant dates based on the provisions of Federal Rule of Civil Procedure 6. In particular, she determined that Nassiri's time for seeking Supreme Court review of the state court's judgment expired on February 28, 2017. His statute of limitations therefore expired on February 28, 2018—one year later, and one day before his petition was submitted.

Nassiri's counsel had not recognized the petition's untimeliness prior to submission, and so did not make any arguments in the petition about why his delay should be excused. Nevertheless, the magistrate judge recognized that the AEDPA statute of limitations was subject to equitable tolling and addressed this possible defense. She inferred that Nassiri's counsel had simply miscalculated the filing deadline and concluded that this was a "garden variety claim of excusable neglect" that did not warrant equitable tolling. (R&R, R. 3 at PageID #130 (quoting *Holland v. Florida*, 560 U.S. 631, 651 (2010)).) She also observed that Nassiri did not claim

actual innocence, and thus his failure to comply with the statute of limitations could not be excused on that basis. After so concluding, she recommended that the district court deny a certificate of appealability ("COA"), finding that reasonable jurists could not debate whether Nassiri's petition was timely.

Nassiri then filed an objection to the magistrate's R&R, which was prepared and submitted by the same counsel responsible for his untimely filing. In it, counsel acknowledged that Nassiri's petition "was unknowingly filed one day late" and that she had failed to argue for equitable tolling because she thought the petition was timely. (Pet'r Obj. to R&R, R. 4 at PageID #134.) Counsel explained that she had used a mechanical device called a Date Finder to determine the filing deadline and that the device had wrongly indicated that the deadline was March 1, 2018. Counsel further noted that Nassiri had relayed to her, via his sister who often served as an intermediary, "his concern that the March 1 filing deadline was wrong." (*Id.* at #136.) Counsel also submitted an affidavit alongside the objection, in which she acknowledged that Nassiri's sister told her of his concern on a phone call and said that she responded by simply using the Date Finder to again determine that the deadline was March 1, 2018, without confirming the accuracy of the date through any other method. Based on this fact, counsel argued in the objection that she was "seriously negligent" when she "failed to use an alternative method to confirm the DateFinder determination after Petitioner himself questioned the accuracy of the March 1, 2018 deadline." (*Id.* at ##136–37.) This serious negligence, she contended, was an extraordinary circumstance justifying tolling the statute of limitations.

On December 7, 2018, the district court issued an opinion adopting the magistrate's R&R. The court acknowledged that Nassiri's counsel was "ineffective," but nevertheless concluded that her ineffectiveness did not merit tolling the statute of limitations because the facts presented did not show that counsel had "abandoned" Nassiri. (Dist. Ct. Op. & Order, R. 5 at PageID ##150–51.) It further observed that "Petitioner does not assert that further proceedings, including an evidentiary hearing, might indicate that he should prevail." (*Id.* at #151.) Accordingly, the district court denied Nassiri's petition and declined to issue a COA.

Nassiri, now represented by new counsel, filed a timely notice of appeal and moved this Court for a certificate of appealability. This Court granted a COA, concluding that "[b]ecause

there is some evidence that Nassiri's attorney did not present the full picture" of her misconduct to the district court, "jurists of reason could debate whether the district court was correct in its procedural ruling."  (Order Granting COA, Doc. No. 9 at 3.)

## DISCUSSION

### I.

This case comes before us in an unusual procedural posture.  Nassiri asserts that he is entitled to equitable tolling based on the misconduct of his former attorney, and he argues for the first time on appeal that the same former attorney minimized the severity of her misconduct before the district court.  His chances of success hinge on factual allegations not fully presented to the district court—namely, that his attorney disregarded his requests to submit his petition on time and that she misled him to believe the petition would be timely filed.  Before turning to the merits of Nassiri's argument, then, we must determine whether we can consider the new argument and factual allegations made on appeal.

As a general rule, this Court declines to consider arguments not presented below, as "[o]ur function is to review the case presented to the district court, rather than a better case fashioned after a district court's unfavorable order." *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 753 (6th Cir. 2011) (quoting *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 922 (6th Cir. 2006)).  We have explained that it is inappropriate to consider a new equitable tolling argument on appeal where that argument "was not presented in the district court and [was] not within the scope of the COA." *Id.* at 752.

This case presents neither of these concerns.  Nassiri's requested relief is a remand to the district court.  This would permit that court to exercise its proper factfinding role and avoid coopting that role for this Court.  And the facts alleged on appeal are clearly within the scope of the COA granted by this Court—in fact, they are the very reason a COA was granted.

Moreover, even when faced with these concerns, we may consider new arguments on appeal if failing to do so would result in a "plain miscarriage of justice." *Id.* at 753 (quoting *Durden*, 448 F.3d at 922).  Before the district court, the same counsel responsible for Nassiri's

delayed filing took up the task of arguing that her conduct was egregious enough to qualify as an exceptional circumstance preventing timely filing. Nassiri has thus had no previous opportunity to argue that his attorney misrepresented her conduct. Given this situation, refusing to consider new facts and argument on appeal would result in a miscarriage of justice, and we will therefore consider those facts and argument in deciding whether to remand this case.

## II.

The seriousness of Nassiri's former counsel's conflict of interest suggests that a remand is appropriate here. The Supreme Court has repeatedly expressed concern about attorneys presenting arguments regarding their own misconduct. In *Maples v. Thomas*, 565 U.S. 266, 285 n.8 (2012), for instance, the Court cautioned that a law firm representing a criminal defendant faced "a significant conflict of interest" in representing him on habeas review after it had missed a state-court deadline, resulting in procedural default. After that error, the Court observed, "the firm's interest in avoiding damage to its own reputation was at odds with [the petitioner's] strongest argument—*i.e.*, that his attorneys had abandoned him, therefore he had cause to be relieved from the default." *Id.* The Court suggested that the firm should have "cede[d] [the petitioner's] representation to a new attorney, who could have made [his] abandonment argument plain to the Court of Appeals." *Id.*; *accord Christeson v. Roper*, 574 U.S. 373, 378 (2015) (explaining that "[c]ounsel cannot reasonably be expected" to argue that equitable tolling was justified by a "serious instance[] of attorney misconduct" when that claim would require counsel to "denigrate their own performance," thus "threaten[ing] their professional reputation and livelihood" (quoting *Holland*, 560 U.S. at 651–52)).

This situation presents particular concern because the district court *sua sponte* denied Nassiri's petition as untimely. When a court exercises this power, it must give the petitioner "a fair opportunity to show why the limitation period should not yield dismissal of the petition." *Shelton v. United States*, 800 F.3d 292, 294 (6th Cir. 2015) (quoting *Day v. McDonough*, 547 U.S. 198, 210 (2006)). The district court here gave Nassiri his due opportunity to be heard, via his objection to the magistrate judge's R&R. But it is not clear that that opportunity was fair, given the conflicted counsel representing him.

Remand is an appropriate remedy. When faced with lingering questions of fact in confronting an equitable tolling argument, courts frequently remand for further factual development and legal argument. *See, e.g.*, *Downs v. McNeil*, 520 F.3d 1311, 1325 (11th Cir. 2008); *Fleming v. Evans*, 481 F.3d 1249, 1256–57 (10th Cir. 2007); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002). The Supreme Court did so in the leading case addressing whether attorney misconduct merits equitable tolling. *See Holland*, 560 U.S. at 653–54 (remanding to the Eleventh Circuit "to determine whether the facts in this record entitle [the petitioner] to equitable tolling, or whether further proceedings, including an evidentiary hearing, might indicate that respondent should prevail"). This Court did so in *Robertson v. Simpson*, 624 F.3d 781, 786 (6th Cir. 2010). *See id.* (remanding "for a determination of whether [counsel's] cocaine use and possible misadvice constitute sufficient extraordinary circumstances to warrant equitable tolling"); *see also, e.g.*, *Ata v. Scutt*, 662 F.3d 736, 745 (6th Cir. 2011).

The Second Circuit also did so in a case substantially similar to this one. *See Davis v. Lempke*, 642 F. App'x 31 (2d Cir. 2016) (order). In *Davis v. Lempke*, the Second Circuit noted that counsel's representation of the petitioner on appeal after his own failure to timely file the habeas petition at issue raised the very same concerns previously set forth by the Supreme Court. *Id.* at 32–33 (citing *Christeson*, 574 U.S. at 378). The court observed that counsel's representation of the petitioner threatened the appellate proceedings' integrity and public perception, and thus exercised its discretion to disqualify counsel, even though "nothing about [counsel's] performance suggest[ed] that his advocacy before [the court] ha[d] been anything but zealous." *Id.* The court also expressed concern about whether the district court proceedings were tainted by the same conflict of interest, despite counsel's efforts to avoid that conflict by arranging for another attorney to present the petitioner's equitable tolling argument below. *Id.* at 33. Thus, despite the fact that the district court "had no particular reason" to recognize the conflict of interest given this arrangement, the court elected to vacate the district court's decision and remand so the district court could hold a hearing on whether the petitioner's equitable tolling argument was fairly presented. *Id.* at 33–34. In this case, we think it appropriate to take similar action.

**III.**

Of course, a remand would be pointless if Nassiri had no potentially meritorious equitable tolling argument to make before the district court. To be entitled to equitable tolling of the AEDPA statute of limitations, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

The record leaves open the possibility that Nassiri could make both showings on remand. Nassiri now alleges that he pursued his rights diligently not just by conveying his concerns about his petition's timeliness to his prior counsel at least once, but also by "ma[king] it clear [to counsel] that [his family] wanted the [p]etition filed earlier." (Pet'r Br. at 13.) Likewise, Nassiri argues that counsel did not simply miscalculate the relevant filing deadline, which would constitute only "a garden variety claim of excusable neglect" and not an "extraordinary circumstance" preventing timely filing. *Holland*, 560 U.S. at 651 (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). Counsel acknowledged below that she disregarded Nassiri's express concern about her incorrect calculation of his filing deadline. Beyond that, Nassiri now contends that counsel flouted requests to file his petition on time or early and misled him by "assur[ing] [his] sister (acting as his agent) that a timely petition had been or would soon be filed." (Pet'r Br. at 30.) Given Nassiri's prior counsel's conflict of interest, it stands to reason that she may not have presented the district court with the full picture of either Nassiri's efforts to ensure that his petition was timely filed or her own misconduct leading up to the untimely filing.

Under the analysis applied by the district court, even if Nassiri could fully prove his factual allegations regarding his prior counsel's misconduct, they would constitute an extraordinary circumstance only if that conduct rose to the level of abandonment. In applying this standard, the district court relied heavily on the Supreme Court's opinion in *Maples v. Thomas*, which it implied narrowed the type of attorney misconduct that could constitute an extraordinary circumstance to only active abandonment.

We note that this Court has yet to consider how *Maples* impacts our analysis of extraordinary circumstances in the context of equitable tolling, but at least two of our sister circuits have rejected the district court's reading. *See Cadet v. Fla. Dep't of Corr.*, 853 F.3d 1216, 1236–37 (11th Cir. 2017) (rejecting the idea that *Maples* implicitly overruled *Holland* and clarifying that attorney misconduct other than abandonment can constitute an extraordinary circumstance for the purposes of equitable tolling); *Luna v. Kernan*, 784 F.3d 640, 649 (9th Cir. 2015) ("[I]t's decidedly unclear to what extent, if any, *Maples* abrogated *Holland*'s reasoning on the question whether attorney misconduct falling short of abandonment may qualify as an extraordinary circumstance for equitable tolling purposes. For now, then, our cases holding that egregious attorney misconduct of all stripes may serve as a basis for equitable tolling remain good law."); *cf. Rivas v. Fischer*, 687 F.3d 514, 538 & n.33 (2d Cir. 2012) (reasoning that *Maples* modified *Holland* and adopting the rule that, "in order to rise to the level necessary to constitute an 'extraordinary circumstance,' . . . attorney negligence must be so egregious as to amount to an effective abandonment of the attorney-client relationship," without clarifying whether other forms of attorney misconduct could constitute extraordinary circumstances (citations omitted)). Our sister circuits more closely dispute whether attorney negligence can ever ground a showing of extraordinary circumstance post-*Maples*. *Compare Cadet*, 853 F.3d at 1236 (concluding based on *Maples* that attorney "negligence, even gross negligence, alone is [not] enough to meet the extraordinary circumstance requirement for equitable tolling in a habeas case"), *with Rivas*, 687 F.3d at 538 (concluding that negligence can only justify equitable tolling if it rises to the level of "effective abandonment"), *and Luna*, 784 F.3d at 649 (reading *Maples*' negligence analysis as cabined to the procedural default context, and concluding that "egregious attorney misconduct," including negligence, "may serve as a basis for equitable tolling").

In any event, we need not decide either question now, given that the full picture of Nassiri's counsel's conduct is not yet before us. The district court should consider these questions anew and with the benefit of full briefing from both parties if it becomes necessary to do so. At this juncture, the evidence before us does not allow us to conclude that an "extraordinary circumstance" prevented Nassiri's timely filing, but also does not preclude such a conclusion. We are therefore convinced that Nassiri is entitled to a remand in order to reargue the issue below.

**IV.**

For these reasons, we **VACATE** the district court's decision and **REMAND** in order to allow Nassiri an opportunity to develop and present his equitable tolling argument anew, while represented by unconflicted counsel. On remand, the warden should also be permitted to respond to Nassiri's equitable tolling argument prior to any district court ruling.